IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


PHYLLIS ANNETTE HILL                                               PLAINTIFF

              v.                        Civil No. 09-3077

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                     DEFENDANT

**MEMORANDUM OPINION**

I.    **Factual and Procedural Background**

       Plaintiff, Phyllis Annette Hill, appeals from the decision of the Commissioner of the Social

Security Administration (Commissioner) denying her application for disability insurance benefits

(DIB), pursuant to §§ 216(i) and 223(d) of Title II of the Social Security Act, 42 U.S.C. §§ 416(i)

and 423(d) ("the Act").

       Plaintiff filed her DIB application on May 31, 2007, alleging a disability onset date of

December 22, 2006, due to chronic obstructive pulmonary disorder ("COPD"), asthma, high blood

pressure, and back pain.  Tr. 38-39, 43-45, 56, 87-89, 118-20, 129.  On the alleged onset date,

Plaintiff was 46 years old with a high school education.  Tr. 134.  She performed past relevant work

as a sewing machine operator.  Tr. 196.

       Plaintiff's DIB application was denied at the initial and reconsideration levels.  Tr. 51-53,

56-57.  At Plaintiff's request, an administrative hearing was held on December 18, 2008.  Tr. 8-31.

The Administrative Law Judge ("ALJ") rendered an unfavorable decision on May 11, 2009, finding

Plaintiff was not disabled within the meaning of the Act.  Tr. 40-50.  Subsequently, the Appeals

Council denied Plaintiff's Request for Review on October 27, 2009, thus making the ALJ's decision

-1-

the final decision of the Commissioner.  Tr. 1-4.  Plaintiff now seeks judicial review of that decision.

## II.   <u>Medical History</u>

Plaintiff has a history of back pain, asthma and shortness of breath.  Tr. 210.  On April 3, 2006, Plaintiff presented to PHS Indian Hospital with complaints of low back pain.  Tr. 216.  Upon examination, she had normal range of motion and strength in her lower extremities, but pain on flexion of the lumbar spine.  Tr. 216.  She was discharged with prescriptions for Naprosyn, a non-steroidal anti-inflammatory, and Skelaxin, a muscle relaxer.  Tr. 216.

On December 15, 2006, Plaintiff was given a trigger point injection for her low back pain.  Tr. 236.  In March 2007, Plaintiff saw M. Scott, M.D., with complaints of low back pain.  Tr. 231-33. She was given Lortab and Naprosyn for right sacroiliac joint dysfunction.  Tr. 233.  On June 20, 2007, Plaintiff went to Tulsa Urban Clinic for asthma, anxiety, and back pain.  Tr. 230.  She was given a prescription of Trazodone for anxiety and insomnia.  Tr. 230.

In March 2007, Plaintiff presented to North Arkansas Regional Medical Center with difficulty breathing.  Tr. 267-71.  She was diagnosed with asthma, given a breathing treatment, and discharged.  Tr. 270-71.  After being diagnosed with pneumonia in May 2007, Plaintiff presented to North Arkansas Regional Medical Center twice with complaints of shortness of breath, wheezing and chronic recurrent cough.  Tr. 254-66.  Upon examination, Plaintiff had acute exacerbation of chronic bronchitis, with labored respirations, bilateral diminished breath sounds, and wheezing.  Tr. 254-56.  Plaintiff was given an Albuterol nebulizer, an inhaler, and a prescription for Prednisone. Tr. 256.  She underwent respiratory therapy with Xopenex, which she tolerated well.  Tr. 258, 265. X-rays of Plaintiff's chest yielded normal results.  Tr. 260, 266.  She was discharged in stable condition.  Tr. 256, 264.

On June 18, 2007, Plaintiff went to the emergency room with complaints of breathing difficulties.  Tr. 244-48.  On examination, she was in no acute respiratory distress.  Tr. 247.  Her lungs were clear with equal breath sounds and adequate air exchange.  Tr. 247.  She was diagnosed with panic attack and discharged in stable condition.  Tr. 247-48.  On July 15, 2007, Plaintiff presented with complaints of shortness of breath and edema of her lower extremities.  Tr. 273-78.  Chest x-rays were unremarkable.  Tr. 277.  An EKG revealed a nonspecific intraventricular conduction defect on 12 lead.  Tr. 275.  She was given a breathing treatment and discharged with a prescription for Hydrochlorothiazide ("HCTZ") for fluid retention.  Tr. 274-78.  She was diagnosed with acute respiratory distress, asthma, and anxiety.  Tr. 318-19.

In a Physical Residual Functional Capacity ("RFC") Assessment dated July 19, 2007, Mary Rees, M.D., reviewed Plaintiff's medical records and determined she could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk/sit for about six hours in an eight-hour workday, and push/pull an unlimited amount, except as shown for lift/carry.  Tr. 301.  Dr. Rees found Plaintiff could frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, and occasionally climb ladders/ropes/scaffolds.  Tr. 302.  She found no visual, communicative or manipulative limitations. Tr. 302-03.  Environmentally, Dr. Rees determined Plaintiff could tolerate unlimited exposure to extreme cold, heat, wetness, humidity, noise, and vibration, but must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards, such as machinery or heights.  Tr. 304.  She found no other limitations.  Tr. 307.

In 2007 and 2008, Plaintiff went to Medical Clinic Mission for her chronic back pain and asthma.  Tr. 239-40, 382-93.  Plaintiff was prescribed Albuterol Sulfate in addition to her regimen of asthma medication (Singulair, Advair, and Zyrtec), Paroxetine for anxiety, Celebrex, and Lipitor.

Tr. 239-43.  In August 2007, Plaintiff suffered a lumbar strain, for which she was prescribed Lortab and Flexeril.  Tr. 311.  In January 2008, Plaintiff complained of swelling in her hands and feet, for which she was prescribed Lasix.  Tr. 386.

On September 29, 2007, Plaintiff presented to North Arkansas Regional Medical Center with complaints of low back pain.  Tr. 340-42.  Upon examination, Plaintiff had no tenderness, spasms, or definite trigger points.  Tr. 341.  Range of motion was adequate and there was no significant deformity of the lower back.  Tr. 341.  Plaintiff had normal muscle strength and tone, with no signs of weakness or sensory findings.  Tr. 341.  She was given a Nubain injection and prescribed Medrol and Vicodin.  Tr. 341.

On November 5, 2007, Dr. Scott completed a Physical RFC Assessment, indicating Plaintiff suffered from low back pain, asthma, and hypertension.  Tr. 331.  Dr. Scott noted he had prescribed pain and anti-inflammatory medication and given Plaintiff a steroid injection, which provided limited relief.  Tr. 331.  He found Plaintiff's back pain was severe enough to occasionally interfere with her attention and concentration.  Tr. 332.  Additionally, he found Plaintiff could tolerate moderate work stress.  Tr. 332.  Dr. Scott opined that he could not objectively assess Plaintiff's exertional limitations.  Tr. 434.

Plaintiff saw Dr. Scott in January 2008 with complaints of back and hand pain.  Tr. 435.  At this time, Dr. Scott discussed referring Plaintiff to a pain specialist for her uncontrolled pain levels.  Tr. 435.  She was also treated for right knee pain and polyarthralgia in June 2008.  Tr. 437.

On February 1, 2008, Plaintiff presented to North Arkansas Regional Medical Center with complaints of leg swelling and shortness of breath.  Tr. 364-66.  Upon examination, Plaintiff had moderate pitting edema in her left lower leg and mild edema of her right leg.  Tr. 365.  Chest x-rays

-4-

yielded unremarkable results.  Tr. 365, 368.  An EKG demonstrated a normal sinus rhythm and axis, with no evidence of ischemia.  Tr. 365, 367.  Plaintiff was discharged with instructions to increase her dosage of Lasix.  Tr. 366.

As of April 2008, Plaintiff was taking Simvastatin, Atenolol, Celebrex, Paroxetine, Trazodone, Singulair, Clemastine, Advair, Proventil, Albuterol Sulfate, Atrovent, Lasix, Ultram ER, HCTZ, Cyclobenzaprine, and Meloxicam.  Tr. 21-23, 383.  Plaintiff also began taking Chantix to aid in quitting smoking.  Tr. 385.  In August 2008, Plaintiff stated her asthma was better, although she still experienced weather flare-ups.  Tr. 384.  She admitted not using her Advair on a regular basis.  Tr. 384.

On July 29, 2008, Plaintiff underwent a consultative physical examination performed by Rex Ross, M.D.  Tr. 369-73.  Upon examination, Plaintiff had full range of motion in her shoulders, elbows, wrists, hands, knees and ankles.  Tr. 371.  Hip flexion was limited to 90 degrees (out of 100).  Cervical spine extension was limited to 50 degrees (out of 60) and rotation was limited to 70 degrees (out of 80).  Tr. 371.  Plaintiff had full range of motion in her lumbar spine.  Tr. 371. Straight-leg raising was negative on both the right and left sides.  Tr. 372.  Dr. Ross noted no muscle spasms, weakness, or atrophy.  Tr. 372.  Plaintiff was able to hold a pen and write, touch her fingertips to her palm, oppose her thumbs to her fingers, pick up a coin, stand/walk without assistive devices, walk on her heels and toes, and perform a three-fourth squat from a squatting position.  Tr. 372.  Grip strength was normal.  Tr. 372.  Plaintiff had normal lower extremity pulses, with no evidence of edema.  Tr. 372-73.  Dr. Ross assessed Plaintiff with COPD/emphysema, degenerative joint disease of the spine, high blood pressure- controlled, depression, obesity, and hyperlipidemia. Tr. 373.

Dr. Ross also completed a Medical Source Statement, in which he found Plaintiff could occasionally lift/carry up to ten pounds, sit for a total of four hours in an eight-hour workday, stand for a total of two hours in an eight-hour workday, and walk for a total of one hour in an eight-hour workday.   Tr. 375-81.   He determined Plaintiff could continuously handle, finger, and feel, occasionally reach and push/pull, and frequently operate foot controls.   Tr. 377.   Dr. Ross also determined Plaintiff could occasionally climb stairs and ramps, balance, stoop, and kneel, but never climb ladders or scaffolds, crouch, or crawl.   Tr. 378.   Environmentally, he found Plaintiff could never tolerate exposure to unprotected heights, humidity and wetness, dust, odors, fumes, irritants, and extreme heat and cold, but could frequently tolerate moving mechanical parts and vibrations, and could occasionally operate a moving vehicle.   Tr. 379.   Dr. Ross also noted Plaintiff could not travel without a companion for assistance and could not walk a block at a reasonable pace on rough or uneven surfaces.   Tr. 380.

In January 2009, Plaintiff presented to W.W. Hastings Indian Hospital after falling and injuring her lower back.   Tr. 443-46.   Although she arrived in a wheelchair, Plaintiff had no trouble ambulating when x-rays were taken.   Tr. 444.   X-rays of Plaintiff's sacral area and coccyx were negative for fracture or dislocation.   Tr. 446.   She was discharged with prescriptions for Naproxen and Cyclobenzaprine.   Tr. 444.

## III.   __Applicable Law__

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.   *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).   "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."   *Estes v. Barnhart*, 275 F.3d 722, 724 (8th

-6-

Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a  medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  An applicant must also establish that she was disabled before the expiration of her insured status.  *See* 42 U.S.C. §§ 416(i), 423(c); *Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir.1995) (per curiam) (citing *Battles v. Sullivan,* 902 F.2d 657, 659 (8th Cir.1990)).

The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity (RFC) to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience.  *Pearsall*, 274 F.3d at

1217; 20 C.F.R. § 404.1520(a), 416.920(a).  If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is declared not disabled.  *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   **Discussion**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since December 22, 2006, the alleged onset date.  Tr. 45.  At step two, he determined Plaintiff suffers from asthma, degenerative joint disease of the spine, and obesity, all of which impose more than minimal limitations on her ability to perform basic work activities.  Tr. 45.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 45-46.  At step four, he determined Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to fumes, odors, gases, dusts, and poor ventilation, and must avoid hazards, including unprotected heights and moving machinery.  Tr. 46-48.  After eliciting testimony from a vocational expert, the ALJ determined Plaintiff could return to her past relevant work as a sewing machine operator.  Tr. 48-49. Alternatively, he found Plaintiff could perform representative occupations such as production worker, of which there are 300,000 jobs in the national economy and 6,300 jobs in Arkansas, poultry eviscerator, of which there are 44,000 jobs in the national economy and 5,000 jobs in Arkansas, and cashier, of which there are 1,160,000 jobs in the national economy and 4,000 jobs in Arkansas.  Tr. 49.  Accordingly, the ALJ determined Plaintiff was not under a disability, as defined in the Act, at any point from December 22, 2006, through May 11, 2009, the date of his decision.  Tr. 49-50.

Plaintiff asserts that the ALJ's opinion is not supported by substantial evidence.  Specifically, Plaintiff contends the ALJ erred by: (1) improperly determining her RFC; (2) failing to adequately consider her subjective complaints; and (3) finding she could perform her past relevant work.  *See* Pl.'s Br. 2-8.

A.  Plaintiff's RFC

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

First, Plaintiff argues the ALJ did not afford proper weight to Plaintiff's treating physician, Dr. Scott.  *See* Pl.'s Br. 3-4.  We disagree.  A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record.  *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling.  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  A treating physician's evaluation may be disregarded where other

medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

Significantly, no treating physician opined that Plaintiff was unable to work. *Johnston v. Apfel*, 210 F.3d 870, 873 (8th Cir. 2000) (no treating physician expressed any opinion that the claimant was disabled). In a Physical RFC Assessment, Dr. Scott determined Plaintiff's impairments were severe enough to occasionally interfere with her attention and concentration, yet he found Plaintiff could tolerate moderate work stress. Tr. 332. He also found that Plaintiff's narcotic and anti-inflammatory medications help control her pain. Tr. 331. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an impairment that can be controlled by medication is not considered disabling). Most notably, Dr. Scott declined to assess Plaintiff's exertional abilities, so his opinion provided little insight into the nature and extent of Plaintiff's work-related limitations. *See Walde v. Apfel*, 242 F.3d 378 (8th Cir. 2000) (treating physician's findings were incomplete and did not provide a basis for the assessed limitations); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) ("[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements"). As such, the ALJ did not err in his treatment of Dr. Scott's opinion.

Additionally, Plaintiff argues the ALJ erred in discounting the opinion of Dr. Ross, a one-time consultative examiner. *See* Pl.'s Br. 6-7. A non-treating physician's assessment does not usually constitute substantial evidence. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Here, the ALJ properly discounted the opinion of Dr. Ross. Upon examination, Plaintiff had full range of

motion in her shoulders, elbows, wrists, hands, knees and ankles.  Tr. 371.  Range of motion in

Plaintiff's hips and cervical spine was limited by ten degrees, but was otherwise normal.  Tr. 371.

Plaintiff had full range of motion in her lumbar spine.  Tr. 371.  Straight-leg raising was negative on

both the right and left sides.  Tr. 372.  Dr. Ross noted no muscle spasms, weakness, or atrophy.  Tr.

372.  Plaintiff was able to hold a pen and write, touch her fingertips to her palm, oppose her thumbs

to her fingers, pick up a coin, stand/walk without assistive devices, walk on her heels and toes, and

perform a three-fourth squat from a squatting position.  Tr. 372.  Grip strength was normal.  Tr. 372.

Plaintiff had normal lower extremity pulses, with no evidence of edema.  Tr. 372-73.  Despite these

largely unremarkable findings, Dr. Ross completed an essentially disabling RFC assessment.  Tr.

199, 369-73.  The ALJ correctly noted that Dr. Ross' opinion was inconsistent with his own findings

as well as the medical evidence as a whole.  *Weaks v. Shalala*, 12 F.3d 1104 (8th Cir. 1993)

(consultative physician's opinion was inconsistent with his own clinical findings).  Accordingly, the

ALJ properly considered and dismissed Dr. Ross' highly restrictive RFC assessment.

Finally, we find no error in the ALJ's reliance on the opinion of the non-treating, non-

examining state agency physician.  Although a non-treating physician's opinion is usually not

considered substantial evidence, no treating physician offered a complete RFC assessment in this

instance and no treating physician opined that Plaintiff was unable to work.  *See Raney v. Barnhart*,

396 F.3d 1007, 1010 (8th Cir. 2005) (medical evidence supported ALJ's RFC assessment when no

treating physician opined the claimant was unable to work any job); *see Masterson v. Barnhart*, 363

F.3d 731, 738 (8th Cir. 2004) (ALJ's reliance on the opinions of non-treating physicians was proper

when medical records from claimant's treating physicians did not conflict with these medical

opinions).  Furthermore, Dr. Rees' assessment is supported by the medical evidence of record.  For

these reasons, it was proper for the ALJ to rely on Dr. Rees' RFC assessment.

After considering all the relevant evidence, we conclude that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence). None of Plaintiff's medical records support her contention that she is totally disabled. Plaintiff failed to demonstrate that she is unable to perform substantial gainful activity. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Accordingly, substantial evidence supports the ALJ's RFC assessment.

B. Plaintiff's Subjective Complaints

Plaintiff contends the ALJ failed to make express credibility determinations regarding her subjective allegations. Pl.'s Br. 3-4. We disagree.

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d

-12-

at 792).

Plaintiff contends the ALJ was required to address each *Polaski* factor.  Pl.'s Br. 4.  However, it is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).   In discounting Plaintiff's subjective complaints, the ALJ noted the effectiveness of medication in controlling Plaintiff's pain and asthma symptoms.  Tr. 48; *see Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (an impairment is not considered disabling if it is adequately controlled with medication).  He also noted Plaintiff exaggerated her symptoms while being treated in the emergency room after a fall.  Tr. 48; *see Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997) (ALJ may consider evidence that a claimant has exaggerated her symptoms when evaluating claimant's subjective complaints).   Moreover, medical records establish that Plaintiff's asthma was largely controlled, with the exception of weather-related flare-ups.  Tr. 384.  She also reported not regularly using her Advair.  Tr. 384; *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (failure to take medication as prescribed).

Plaintiff's medical records and seeming improvement with medication cast doubt on the validity of her testimony.  Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints.  For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

C. Past Relevant Work

Plaintiff argues the ALJ erred in finding she could return to her past relevant work as a sewing machine operator. *See* Pl.'s Br. 7-8. Specifically, Plaintiff asserts her past work exacerbated her asthma symptoms, which forced her to quit. Tr. 16. We find no merit in this argument.

The ALJ posed a hypothetical question to the vocational expert ("VE") which adequately reflected Plaintiff's asthma/COPD limitations. Tr. 196-97. The ALJ specifically noted Plaintiff must avoid concentrated exposure to fumes, odors, gases, dusts, and poor ventilation, and must avoid hazards, including unprotected heights and moving machinery. Tr. 196-97. Based on this hypothetical, the VE responded that Plaintiff could return to her past work as a sewing machine operator, either as she performed it or as commonly performed in the industry. Tr. 198. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations adopted by the ALJ. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). Moreover, the VE found Plaintiff could perform her past work despite any limitations posed by her asthma. Accordingly, Plaintiff has not met her burden of establishing she was unable to perform her past relevant work. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). For these reasons, we affirm the ALJ's decision.

-14-

**V.**     **Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed.  Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 3rd day of February 2011.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE